**Tagged Opinion**

ORDERED in the Southern District of Florida on __Oct 28, 2008__



_____
John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:                                             Case No. 08-14257-BKC-JKO

**FAZLUL HAQUE,**                                  Chapter 7

    Debtor.
_____/

### ORDER GRANTING WELLS FARGO BANK, N.A.'S MOTION FOR RELIEF FROM STAY AND IMPOSING SANCTIONS FOR NEGLIGENT PRACTICE AND FALSE REPRESENTATIONS

**THIS MATTER** came on for continued hearing on September 18, 2008, pursuant to the Motion For Relief From Stay (the "Motion") [DE 14] filed by Wells Fargo Bank, N.A. (the "Creditor"). Since the Creditor has provided sufficient evidence to support the relief requested the Motion will be granted. However, given the nature of the circumstances surrounding the fictitious claim for money owed, sanctions are warranted.

The Motion was filed on April 21, 2008, under the Court's negative notice procedures pursuant to Local Rule 4001-1(C), to which there was no response. *See* Certificate of No Response [DE 15]. After reviewing the Motion, I was concerned about certain charges listed in the affidavit

signed by a representative of the Creditor, and accordingly set an evidentiary hearing for June 24, 2008. Of specific worry was a charge for $2,114.10 in "penalty interest."[1] At the June 24th hearing it became abundantly clear that neither the Creditor's representative nor its counsel, the Florida Default Law Group, P.L. ("FDLG"), could explain this charge. *See* Transcript of 6/24/2008 Hearing [DE 39]. At the request of Creditor's counsel I continued the evidentiary hearing on the Motion so as to provide the Creditor and its counsel ample time to explain the basis for the "penalty interest" charge. *Id.*

For reasons relating in part to the Chapter 7 Trustee's independent investigation into this issue, the second hearing did not take place until September 18, 2008, or approximately three months after the original hearing. At that September 18th hearing the Creditor was represented by Niall T. McLachlan, a very able lawyer who works for Carlton Fields, P.A., a well respected firm of a high reputation. FDLG represented itself at the hearing.[2] As to the "penalty interest," both the Creditor and FDLB conceded at the hearing that this was an erroneous charge and that the Creditor was never entitled to payment on this sum. Penalty interest under the terms of the loan in question is a fee chargeable for prepayment of the loan during the first three years of the loan term. Since the Debtor is in bankruptcy and the Motion was filed based on the Debtor's default, the notion that the Debtor paid off his loan in full to the Creditor is absurd. It is utterly perplexing to me how the Creditor or its law firm could or did assert such a claim.

Christine L. Herendeen, a lawyer at FDLG, testified as to the circumstances encompassing

---

[1]There were other charges claimed by the Creditor which initially concerned the court, however, those concerns have been resolved through further disclosures by the Creditor. Thus, no further action is needed as to those matters.

[2]This brings to mind the classic aphorism that "A lawyer who represents himself has a fool for a client." It would have been prudent for FDLG to have hired counsel. Its decision not to do so is a reflection of the firm's casual attitude toward this matter.

this case. Creditor's new counsel examined Ms. Herendeen, and provided a disclaimer prior to her testimony that, "[s]he has independently done a brief review and has a rough idea of the numbers and she can testify to that, but she won't be able to say with exactitude the cases that these were filed in . . . ." Transcript of 9/18/2008 Hearing *at* pg. 44. I asked Ms. Herendeen who at FDLG had prepared the false affidavit; she could not tell me. I asked her in how many cases penalty interest charges had falsely been included in stay relief affidavits the firm prepared for Wells Fargo. She informed me that FDLG "had run a search on all of the districts. I don't remember the exact numbers even close to this district, because, of course, I was most focused on the Southern; however, I can tell you that it was – there was a spreadsheet that had been prepared and it was less than one page.

"It was not – for example, I could tell you it was definitely less than 50. I feel confident that the number had been less than 50 out of hundreds of cases that we would have filed, hundreds of stay relief motions." Transcript of 9/18/2008 Hearing *at* pg. 48, ll. 10-20. As to what she described as around "five to ten" cases in this district in which penalty interest was included, she was unable to describe whether the debtors in those cases had any equity in the properties in question. Transcript of 9/18/2008 Hearing *at* pgs. 45-47. She did claim that at no point "on the foreclosure side in State Court" would that penalty interest be included since, "no payoff quote would be generated with penalty interest without going through the attorney for review and that attorney would review the state of the case, as well as the specific language in the note and mortgage to determine whether or not it was permissible to be included in the payoff quote." Transcript of 9/18/2008 Hearing *at* pg. 52. She did not, however, make any representation that she (or anyone else at FDLG) had, in fact, reviewed any of the state court files in any of the foreclosure cases in which FDLG had filed false affidavits on behalf of Wells Fargo in the bankruptcy courts to assure the accuracy of that assertion. I accordingly take her assurance on this point with a certain skepticism.

Of perhaps greater relevance is the question as to whether the lawyers at FDLG are examining any of the documents they are filing "on the bankruptcy side." FDLG seems to suggest that state court foreclosure actions are real and important proceedings but that the bankruptcy court is merely an administrative hurdle that warrants no particular consideration as a legal body, and that filing any old pleading without undertaking any investigation into its accuracy is perfectly acceptable practice. That position is unacceptable. A bankruptcy court has an independent responsibility to ensure that the relief it grants is both procedurally and substantively proper. That obligation becomes extraordinarily difficult when law firms like FDLG treat the stay relief process with casual disdain.

Wells Fargo and FDLG chalk this mistake up to human error in that an FDLG employee pulled information from "one particular screen that is utilized when generating payoff statements pursuant to the note or, in this case, the addendum, and it was simply a mistake." Transcript of 9/18/2008 Hearing *at* pg. 47. What is evident is that FDLG prepared the affidavit in this case and the Creditor's employee signed it without any review. *See* Transcript of 6/24/2008 Hearing [DE 39] *at* pg. 29-34. I asked both the Creditor and FDLG what measures they have undertaken to rectify this problem, to which both stated that the professionals at all levels have been notified of the problem and the ramifications for including such improper charges. Transcript of 9/18/2008 Hearing *at* pgs. 48-49.

Although I applaud such remedial actions, I remain troubled that neither FDLG nor the Creditor thought it necessary to undertake any thorough analysis as to the extent or the ramifications of their incompetent behavior. Three months is more than a sufficient time period to undertake an internal investigation, draw conclusions, and provide a complete and detailed report as to the injurious conduct which I uncovered only because something didn't seem right in the stay relief

motion filed in this case. The actual ramifications of this conduct are still unclear to me. What is even more troublesome is that this conduct was not unique to this case. Once counsel and Creditor realized their wayward accounting, it should have set off alarms, not just a "brief review." Instead, a lackadaisical approach was taken in which the parties threw up their hands and said "no harm, no foul," but without, in fact, determining either the full extent of the false affidavit problem in the bankruptcy court stay relief motions or that no false affidavits had been filed in the subsequent state court foreclosure proceedings. And the "no harm, no foul" assertion is itself premised on Wells Fargo's contention that since there was no equity in the properties in question – which neither Wells Fargo nor FDLG could confirm – and the Creditor was thus never going to collect penalty interest. Again, it is unclear to this court whether there is no harm to the debtors involved or to their estates. If the properties sold for more than the alleged debt, then there would indeed be harm. If the Creditor was able to write off the "loss" of spurious penalty interest on its books (and perhaps on its tax returns) then that would appear to constitute harm. And so on.

Since FDLG has provided no more than a cursory estimate as to the cases in which FDLG filed false affidavits claiming "penalty interest" and vaguely fleshed out an analysis as to this conduct, I am left baffled by FDLG's lack of appreciation for the severity of the problem presented and by its casual response. It is well worth noting that this is not the first occasion in which I have witnessed sloppy and unprofessional conduct in FDLG's practice of law. On numerous occasions I have confronted FDLG lawyers about incomplete and insufficient motions for relief from stay. Based on this discussion, sanctions will be levied for purposes of deterrence.

The Court's power to sanction resides both in 11 U.S.C. § 105(a), *Hardy v. Internal Revenue Service (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609 (5th Cir. 1997), and in the inherent

power of the federal courts to sanction improper conduct, *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1574-75 (11th Cir. 1996); *Eck v. Dodge Chemical Co.*, 950 F.2d 798 (1st Cir. 1991).[3]

The inherent power of the federal court to sanction parties is well established and this power reaches both conduct before the court and that beyond the court's confines, for "the underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 798 (1987) (citations omitted).

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court addressed the nature and scope of the inherent power vested in the federal courts. The judicial branch has the overall ability to control judicial proceedings, *i.e.*, to maintain the decorum of the institution, which includes the conduct of parties involved. *Chambers*, at 501 U.S. at 43-44. Such inherent powers, for example, include a federal court's ability to investigate and vacate its own judgment upon proof that a fraud has been perpetrated upon the court, to bar from the courtroom a criminal defendant who disrupts a trial, to dismiss an action on grounds of *forum non conveniens,* and it may act *sua sponte* to dismiss a suit for failure to prosecute. *Id.* at 44. In *Chambers*, the Supreme Court discussed the ability of the judiciary to sanction counsel by awarding attorney's fees as a penalty for inappropriate conduct. 501 U.S. at 42-43. For example, circumstances which may dictate the exercise of inherent power to assess attorney fees against counsel, include those where a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal citations omitted). Thus, the behavior must be tantamount to bad faith, i.e., be knowing or reckless behavior. *Thomas v.*

---

[3]Some courts have taken the position that Section 105(a) was intended to imbue the bankruptcy courts with the inherent power to sanction recognized in other federal courts. *See, e.g., Jones v. Bank of Santa Fe (In re Courtesy Inns)*, 40 F.3d 1084, 1089 (10th Cir. 1994).

*Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002).

However, the Supreme Court, in Chambers, warned that a court must "exercise caution in invoking its inherent power," stating:

> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.

501 U.S. *at* 44 (internal citations omitted). The Court goes on to note:

> [W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* at 50.

Sanctions under my inherent powers would be warranted given the filing of such reckless papers. However, in light of my clear authority to sanction the conduct under § 105, I will heed the Supreme Court's and the Eleventh Circuit's caution in utilizing inherent powers where statutory authority exists under which I may act, thus, I choose to look solely to § 105 for the following sanctions imposed.[4]

Section 105 of the Bankruptcy Code grants statutory powers in the bankruptcy context, stating, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 gives bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process. *See Karsch v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000); *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996).

---

[4]The practical effect of the distinction between the inherent power of courts to sanction and the section 105(a) authority, may be illusory.

I stated the following at the September 18th hearing: "my concern is with the integrity of the process and whether people are viewing what gets filed as a serious matter or whether it's sort of being done on the fly and with all of the diligence and attention that goes into sausage making." Transcript at pp. 52-3. After carefully reviewing the transcript of that hearing I conclude that Wells Fargo and FDLG parties have engaged in the systematic process of churning out unrefined and unexamined form pleadings, instead of producing and filing carefully considered legal papers. This has resulted in an abuse of the system and sanctions to deter continued recklessness are warranted.

FDLG has acknowledged that it filed on behalf of Wells Fargo "less than 50" false affidavits claiming entitlement to default interest. The amount of such interest wrongfully claimed in this case is $2,114.10. Having provided me with no greater detail as to the number of such affidavits actually filed or the amount of default interest falsely claimed in each, I shall assume for purposes of assessing sanctions that FDLG filed 45 such false affidavits on behalf of Wells Fargo and that the amount of default interest in each was equal to the amount falsely claimed here. Therefore, I shall impose sanctions in an amount equal to $2,114.10 for each such false affidavit, for a total sanction amount of $95,130.45. Because both FDLG (which prepared and filed the false affidavits) and Wells Fargo (whose employees swore to their accuracy without any review) have culpability here, the sanctions will be imposed jointly and severally.

Accordingly, having reviewed the Motion, the file, the evidence presented and considering the argument of counsel, it is **ORDERED** that:

1. The Motion [DE 14] is **GRANTED**.

2. The automatic stay provided by 11 U.S.C. § 362 is modified as to Wells Fargo Bank, N.A., its Successors and Assigns. Accordingly, the automatic stay is modified to permit the Movant to continue

its pending mortgage foreclosure action in state court against real property, the legal description of which is described below.

> **COMMENCE AT THE SOUTHEAST CORNER OF SAID TRACT A; THENCE NORTH 0 DEGREES 00 MINUTES 37 SECONDS EAST FOR 602.35 FEET TO THE CENTER LINE OF SOUTHWEST 2ND STREET, THENCE SOUTH 89 DEGREES 53 MINUTES 38 SECONDS WEST FOR 344.72 FEET; THENCE NORTH 15 DEGREES 06 MINUTES 22 SECONDS WEST FOR 30.35 FEET; THENCE NORTH 74 DEGREES 53 MINUTES 38 SECONDS EAST FOR 42.50 FEET; THENCE NORTH 15 DEGREES 06 MINUTES 22 SECONDS WEST FOR 24.335 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE NORTH 15 DEGREES 06 MINUTES 22 SECONDS WEST FOR 24.00 FEET; THENCE NORTH 74 DEGREES 53 MINUTES 38 SECONDS EAST FOR 50.0 FEET; THENCE SOUTH 15 DEGREES 07 MINUTES 22 SECONDS EAST FOR 24.00 FEET; THENCE SOUTH 74 DEGREES 53 MINUTES 38 SECONDS WEST FOR 50.00 FEET TO THE POINT OF BEGINNING.**

3. This Order is entered to allow Wells Fargo Bank, N.A., its Successors and/or Assigns, to commence, prosecute and complete through judgment, sale, certificate of title and possession, a mortgage foreclosure against the property described above. Wells Fargo Bank, N.A., its Successors and/or Assigns, shall not seek or obtain an *in personam* judgment against the Debtor(s).

4. The Florida Default Law Group, P.L. and Wells Fargo Bank, N.A., are **DIRECTED,** jointly and severally, to pay a monetary fine in the amount of **$95,130.45** to the Clerk of this Court for their repeated misrepresentations to this court and to other bankruptcy courts in Florida. Payment shall be made within ten days of this order and Florida Default Law Group, P.L. and Wells Fargo Bank, N.A., are directed to file a notice of compliance on the docket.

# # #

Copies furnished to:

Niall T. McLachlan, Esquire
Carlton Fields, P.A.
100 SE 2nd Street
Suite 4000
Miami, Florida 33131

Fazlul Haque
8110 Sunrise Lakes Blvd., #111
Fort Lauderdale, FL  33322

Andrew M. Bellinson, Esquire
11098 Biscayne Blvd # 206
Miami, FL  33161

Marika Tolz, Trustee
1804 Sherman St
Hollywood, FL  33020

Reggie D. Sanger, Esquire
Reggie David Sanger, PA
208 SE 9th Street
Fort Lauderdale, FL 33316

Cindy L. Runyan, Esquire
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018

Attorney McLachlan is directed to serve a conformed copy of this order on all other interested parties